Good morning, ladies and gentlemen. Good morning, ladies and gentlemen. Can you have a seat, please? And would counsel, who's going to argue this matter, please step forward to the microphone and identify yourselves for the record and the party you represent. People v. Doehring. Good morning, Your Honor. Hannah Peterson from the Office of the State Appellate Defender on behalf of Petitioner Appellant. Thank you. Counsel? Good morning, Your Honors. Assistant State's Attorney Himika Shergill for the people of the state of Illinois. Thank you very much. Could you say your name again? Himika Shergill. Okay. Thank you. All right. So hold on, hold on. So 15 minutes apiece. Do you want time for rebuttal? Yes, Your Honor. Three minutes, please. Okay. All right. Great. Thank you. So my first question to you is if we're raising an age-based challenge to the FOIA requirement with respect to people under 21, aren't we dealing with it as applied challenge instead of a facial challenge? Your Honor, no. This is a facial challenge. And the federal appellate court in Worth that just recently decided a similar issue also concluded that it was a facial challenge. The reason it's a facial challenge as opposed to as applied is because it does not depend on the individual's specific circumstances. Rather, we're challenging two specific facets of the AUUW and FOIA scheme, that being subsection 3C of the FOIA statute, which criminalizes the possession of a weapon without a license, and subsection A2I of the FOIA statute, which makes it restricted to those age 21 and up. So those are facial challenges to those particular subsections of the statutes. Okay. May it please the Court. As I said, there's two facets of the Illinois AUW and FOIA schemes that are facially unconstitutional, the imposition of criminal penalties and the restriction of licensing to those age 21 and up. Can I add? I should have asked it probably while you're answering Justice Reyes's question. Your client wasn't convicted of the age under the age person provision, so how are you raising it when it is not an issue in your case? I want to know how you brought that or are attempting to bring that issue that to me does not seem to apply. Yes, Your Honor. So I think what you're alluding to is the question of standing. And there are cases from this Court that have held that petitioners in my client's situation do have standing to challenge the particular subsections of the FOIA statute that restricted them. That would be People v. Kuykendall and Inree D.B. So although my client was convicted of AUW, no FOIA, as opposed to possession under 21, what we are challenging is the imposition of criminal penalties for possessing a weapon without a FOIA. He was undisputedly convicted of that conduct. And the restriction of licensing to those age 21 and up is unconstitutional or is relevant to this case because that was the reason he could not obtain a FOIA card in the first place. How do we know that? How do we know that? How do we know that he's not a convicted felon and 20 and therefore couldn't get it? I mean, you're saying it, but there's nothing in the record that says that. Your Honor, he was not charged with... I know he wasn't, but he wasn't convicted of being under 21. So I'm still at the same place. I don't know how you bring something before us when he is not convicted. So he was convicted of AUW, no FOIA, and that is the subsection that we are in particular challenging. So that is... No, then I don't have a problem. I'm asking how are you challenging the under 21 when he's not convicted under 21. It sounds more like if I was in a trial court, it would be an affirmative defense that you'd be raising if he was going to trial on that charge. Once again, Your Honor, the FOIA statute in its entirety, what applies under subsection 3C, and in particular it is the under 21 provision that essentially heightens the unconstitutionality here. So primarily the challenge is to subsection 3C, but we also discuss... You discuss a lot, that's fine. It's an issue. You seem to discuss an issue that's not an issue in the case. Well, and once again, Your Honor, I would point this court to Peeble v. Kuykendall. I'm going to look at them. And Ms. Peterson. So let's say you do have standing. Let's just say hypothetically you do have. Don't you agree that it's possible for someone under age 21 to obtain a free card like with parental permission? And if you agree, I think you agree, doesn't that render your facial challenge to the AAUW statute unsuccessful? It does not, Your Honor. You're correct. There is a parental consent piece in the FOIA statute. However, there's still two problems with the statute as it stands. First, with regard to those 18 to 20, the parental consent piece essentially turns this into a May issue scheme because the 18 to 20-year-old's ability to obtain a FOIA card and therefore possess a weapon depends on either their parents agreeing to sponsor their application or the discretion of the Illinois State Police Director if the parent either does not want to help or is legally barred from helping, which is another, you know, issue that could come up. But didn't our Supreme Court already opine on this issue with regards to age 21 being the age of majority and therefore anything that falls underneath that, you know, you're not? Yes, Your Honor. So that was one of the two major points I wanted to make today is the Illinois decisions that have come out recently on this issue of 18 to 20-year-olds have relied on the Illinois Supreme Court's decision in People v. Mosley as well as Jordan G., People v. Aguilar. However, the two new federal appellate decisions that have come out, Wirth and Lara, go through the historical analysis for 18 to 20-year-olds and show that the analysis engaged in by the Illinois Supreme Court does not comport with Bruin's exposition on what constitutes a relevant historical analog. So I think those two new cases provide, you know, cause for this court to move forward. Why specifically? So what the Supreme Court has told us in Bruin and Rahimi is that the... Now Rahimi, we know that there's no issue about age there. There's not, but the court did give you a little bit more detail about what constitutes a relevant historical analog in that case, so I think it's helpful to understanding the issue. It kind of made it easier, didn't it? To some extent. I mean, it did provide some more explanation, Your Honor. But it didn't have to be an exact match. It did not have to be an exact match. However, the principles have to remain consistent between both the historical justification for a law and the historical burdens imposed by a law. And that is not something that the Illinois Supreme Court decided in Mosley. That's not the analysis they followed. And I would also point out that the historical analysis relied on pre-Bruin did not put the burden of showing historical analogs on the state. And that is a big change that the United States Supreme Court made in Bruin. And I would like to go through some of the historical analogs that the Worth and the Lara Court rejected because they are essentially the same ones relied on by the Illinois Supreme Court in those earlier cases. Okay. So one in particular was gun safety regulations from the time of the founding. So that would be things like regulating the storage of gunpowder, regulating the firing of weapons within city limits. The federal appellate courts have concluded that those were not similar enough in terms of justification or in terms of burden. Again, what we're talking about here is the imposition of felony criminal penalties. And these early founding era laws did not do that for these gun safety regulations. And, again, these regulations were about the handling of weapons, not who could possess the weapon. And to be clear, your client at the time when this incident took place, he was not a convicted felon. He didn't have no... That's correct. He had no record. That's correct. Okay. So gun safety regulations are now out as a potential historical analog. There's also some citation in the cases relied on by the Illinois Supreme Court to laws disarming certain groups of people. At the time of the founding, that would have been loyalists to the crown, freed slaves and not freed slaves, Native Americans, disfavored religious groups. Those laws are not a valid historical justification, both because they would violate the Constitution today and because our definition of the people has been expanded by the Constitution itself. We have now the 14th and 15th Amendments granting constitutional rights to the freed slaves. We have the 19th Amendment, which granted voting rights to women, the 26th Amendment, which granted rights to 18 and up adults. So our definition of the people has expanded over time, and those laws targeting certain groups really went to the founding era, you know, analysis of who constituted part of the people. But what about historical analogs to minors and what they called infants? Your Honor, the state... And minors were under the age of 21. That's correct. The state has cited essentially the definition of minor at common law, which did include those who were 21 and younger, or 20 and younger. However, the fact that they were minors does not mean that they did not have constitutional rights or that they were not considered part of the people. Well, so even conceding the point that your client is under the concept of people, as it's defined in Berlin and Liminia and some of the other cases, there's still more about the age factor. I mean, our Supreme Court did the same thing. They did the analysis, and they said, you know, based on the test that the U.S. Supreme Court has provided us, the rule of being under 21 is applicable here. Once again, your Honor, the Illinois Supreme Court's analysis, really, first of all, the Supreme Court did not do its own historical analysis. It pointed to several federal decisions that had preceded it, one out of the Fifth Circuit, I believe, one out of the First Circuit, and one out of a district court in Massachusetts. And in our defense, I mean, this was before Bruin. It was before Bruin, and none of those decisions had the benefit of Bruin's exposition on what constitutes a relevant historical analog. And so essentially the historical analysis in those cases, Mosley, Aguilar, it's incorrect at this point. Again, they did not have the benefit of Bruin. They did not put the burden of identifying historical analogs on the state. And now that the federal appellate courts are starting to reach this issue, they are finding that those historical analogs relied on in those pre-Bruin cases are not relevant analogs. Other examples include 19th century legislation targeting minors that mostly started the 1850s and later. The federal appellate courts have explained that that is not a proper time frame in which to look at historical analogs and that they're therefore not particularly useful in the analysis. And general founding era attitudes about the unvirtuous, that has also been rejected as a relevant historical analog. The fact of the matter is, at the time of the founding, there were not laws restricting those 18 to 20 from possessing weapons. There also were not laws criminalizing the possession of a weapon without a license. And, again, this is the state's burden and they have not put forth a single historical analog justifying either of those burdens imposed by Illinois' statutory scheme. And that's what these cases tend to fall upon, that the state had not met its burden. When you look at some of the other cases like Cawley, they said the state hadn't met its burden and, therefore, the courts went the other way. That's correct, Your Honor. Certainly the federal appellate courts in Worth and Lara concluded that the historical analogs, both identified in prior cases and identified by the government, did not suffice to meet the state's burden. I would like to take a quick second and address the conduct at issue here. This court has decided in some prior cases that the conduct at issue is the possession of a weapon without a license or the possession of a weapon while being under 21. But that is not the correct analysis. In Bruin, the court defined the relevant conduct as simply possessing a weapon outside the home. And a licensing scheme was at issue in that case, but the legality of the licensing scheme comes in at the second step where the state has to justify the licensing scheme. Same thing here. To include the licensing scheme or the age requirement in part of the conduct would be circular. It would essentially put the state's burden off at the first step. So the relevant conduct here really is just possession of a weapon outside the home. Okay, I have another question. So your client was not a convicted felon when he was arrested. But aside from this case, he is now. That's correct. So he doesn't fall under statute anyway. That's correct, Your Honor. So why are we here? Well, Your Honor, my client still has an interest in vacating an unconstitutional conviction from his record. You know, there's case law establishing that people have the right to remove illegal convictions, you know, regardless of whether they're still serving a sentence or not. It's true he is serving a sentence in a separate case. And we don't allege that he would be eligible for a FOID card at this point. That's not part of our argument. But at the time that he was arrested and pled guilty to AAUW no FOID, he was a law-abiding adult with no prior convictions and had a constitutional right to bear arms outside the home for self-defense. So I have another question. So in my CP, the defendant was 16 years old. In Mosley, he was 19. I believe in Aguilar, he was 18. Your guy was almost 21. He was 20, yes. So do we have to factor that as well into this? I believe so, Your Honor, because even a temporary infringement on the right to bear arms is still an infringement on the right to bear arms. You know, Mr. Doering was entitled to carry a weapon outside the home under his Second Amendment rights, and he was prevented from doing so under the FOID Act's requirement that he be at least 21 to obtain a FOID card. And then going back to the conduct, what is it that we're looking at? What is being restricted here? Is it the fact that he was carrying a weapon or that he was carrying a weapon without a FOID card? It is simply the fact that he was carrying a weapon outside the home. That is the relevant conduct for purposes of Bruin Step 1. The licensing and the age requirement come in at Step 2 because those are the provisions of the statute that we are challenging as unconstitutional. And so at that point, it becomes the state's burden to identify a relevant historical analog. And then going to Romini, I mean, everybody except for Justice Thomas filed Bruin. So how does Romini affect Bruin here other than just saying Bruin is good law? That's essentially what it does, Your Honor. Romini confirms the Bruin test. It does expound a little bit on what a historical analog is. But, you know, it also is relevant to this question of what the conduct at issue is because in that case, once again, the court never questioned that the conduct was covered under the Second Amendment. The conduct in that case being, again, possession of a weapon outside the home. It was not defined as being possession of a weapon while being under a domestic violence restraining order. It was simply possession of a weapon outside the home, and then the court proceeded to evaluate the federal statute at issue under the historical analysis test. Well, one thing that the dissent did clear up, or at least intended to clear up, was the fact that one of the tests is not law-abiding citizens. That's correct, Your Honor. And, in fact, the majority made that clear as well. Both the majority and the dissent made clear that the term responsible, and going along with that is law-abiding, really has no mooring in the case law. It is a phrase that the court has used to essentially describe the category of people that undisputedly have Second Amendment rights, but the court said that they did not go on to decide what rights people who are not responsible may enjoy. And so that's simply a question for another day. The majority didn't say anything about law-abiding, did it? It just said responsible. The majority was discussing the term responsible, but in the Illinois cases, those two words tend to go together, law-abiding and responsible. And I would posit that just how the term responsible, the majority has told us it's vague and it doesn't have any particular connection to the text. So the term law-abiding, that's not vague, is it? I think it is vague in the sense that what law are we talking about? Are we talking about all laws, right? Sure. A law-abiding person, law-abiding citizen, that means they can't be violating the law. Sure. Because they abide by the law. Sure. It's much different than a vague term like responsible. Even if we take that definition, Your Honor, it's not connected to the text of the Second Amendment. And so that is what the Rahimi Court was getting at, is that the term responsible is nowhere in the Second Amendment's text, neither is the term law-abiding. It's simply not part of the test of who constitutes the people. And in fact, we really do have an answer to that going all the way back to Heller when the Supreme Court told us that the people is all Americans, that it's everyone that comprises the political community. So that has no connection to the term law-abiding or responsible. So that test is simply out for purposes of this Court's analysis. Okay. Any other questions? No. Okay. Do you want to sum up? You still have time for rebuttal. Thank you, Your Honor. Yes, I will reserve my remaining time for rebuttal. Okay, great. Thank you. Ms. Rahimi. Yes, Your Honor. Wait, please, the court. The AUUW statute that Petitioner is challenging is not unconstitutional, and it does not violate the Second Amendment, even post-ruin. Initially, this Court need not engage in a full, in-depth rule analysis because in recently, it upheld the Illinois Supreme Court's holdings in Moseley, Aguilar, and in Rejordan, all of which upheld the constitutionality of the AUUW statute. Well, what about the argument that the Supreme Court here in Wilson didn't really get it added and Moseley didn't really get it into the historical analog? They did, Your Honor. They did. As this Court stated in Recipe that those cases were decided exactly on the same basis of text as informed by history. In fact, Illinois courts have never relied on the means and scrutiny that Bruin threw out. Therefore, the so-called doctrinal reset that Bruin triggered by rejecting the means and scrutiny does not impact the provisions of this statute, which have always been evaluated under the exact test that Bruin advocates. Well, one of the problems we have here with NRA interest of CP is that it's a Rule 23. It's a not-published case. That's correct, Your Honor. It is a Rule 23. It is not published. But what is published is Moseley. And Moseley is an Illinois Supreme Court case, which clearly states that the provisions of this statute are constitutional. Okay. And in fairness to you as well, all right, so are we dealing with a as-applied constitutional challenge or a facial constitutional challenge? Your Honor, Petitioner has framed their argument as a facial constitutional challenge, which is actually much harder to prove because as the Supreme Court in Rahimi stated, a facial constitutional challenge like the one that Petitioner raises here is the highest burden, the most difficult to establish. And one of the reasons is because we don't know what's going to happen down the road. That's exactly right, Your Honor. Can I interrupt you for just one second? I'm sorry. Do you think they have standing to raise the age challenge to the statute? Your Honor, on the face of it, no, because the Petitioner is now a convicted felon. Petitioner is not really impacted by this. Even if the judgment is void, if it's declared void, it doesn't really impact where the Petitioner is right now. So in my opinion, I don't think they have standing to do this. But that is not one of the arguments we've raised. Well, and to follow up with Justice Lankin's question is that, you know, again, this was an issue that they didn't raise, the age issue. So given that, I mean, should we even be considering this issue? Your Honor, that is actually one of our arguments because, no, they did not raise this in their original 214.01 petition. They filed two 214.01 petitions. The first one was based on Aguilar. The second one was also based on Aguilar. So, yes, based on forfeiture, they have forfeited this argument of age-based analysis here. Going back to Bruin, Bruin explicitly recognized the constitutionality of Illinois' public carry licensing regime under the CCL Act and implicitly recognized the constitutionality of Illinois' possession licensing scheme under the Floyd Act. In fact, the Supreme Court in Bruin made it clear that nothing in its decision should be taken to cast doubt on Illinois' restrictions or on jurisdictions that apply the shall-issue licensing regime. The court clarified that New York's may-issue licensing regime was an outlier. Forty-six other jurisdictions, including Illinois, followed the shall-issue licensing regime, under which the authorities must issue a license if certain statutory threshold requirements are met. And the court clarified that nothing in its judgment should be taken to cast doubt on jurisdictions that apply the objective shall-issue licensing regime. How do you respond to Ms. Peterson's argument about this actually sort of constituting a may-issue situation with respect to age 21 and parental permission? I completely disagree with what counsel said, because in Illinois, under the Floyd Act statute, it is very clear if the statutory requirements and the threshold statutory requirements, if those are met, then the license has to be issued. There is no discretion, so this is what differs. And this is what differentiates Illinois law from the New York law, because under the New York law, it was clearly a may-issue regime that they were questioning, whereas here it is very clear if statutory requirements are met, license has to be issued. In fact, Justice Kavanaugh, in his concurrence in Bruin, stated that going forward, the 43 jurisdictions that apply the shall-issue licensing regimes may continue to do so in the future. Therefore, Bruin's clear endorsement of Illinois' licensing programs itself is sufficient for this court to reject Petitioner's facial challenge to this statute. But even if Bruin had not clearly or specifically endorsed Illinois' statutes, its reasoning makes it clear that the AUUW statute is not unconstitutional. Bruin held that if the plain text of the Second Amendment covers an individual's conduct, the Constitution presumptively protects that conduct. The burden then falls on the government to establish that their regulation is consistent with the nation's historical tradition of firearm regulation. Under the first step of this analysis, which is the textual analysis, as again this court stated in Ingres C.P., Petitioner is not among the people protected by the Second Amendment. Now, Petitioner would like this court to believe that the conduct that is in question here is simple possession of firearms. However, Your Honors, it is not. It is the possession of firearms by individuals under the age of 21, which needs to be analyzed here. So what is the conduct, actually? Is it the fact that carrying a firearm without a licensing, violating a licensing requirement, or is it the fact that we have someone carrying a firearm? Your Honor, it is the fact that he was carrying a firearm outside the home by an individual under the age of 21 because in the absence of a FOIA card, Petitioner was charged under the section which directly talks about the FOIA cards being absent. He was not charged under the section or he was not convicted under the section where he was just because he was under 21, it is illegal. So that exactly is the section under attack here. Historically speaking, as the Illinois Supreme Court has recognized in Moseley, Aguilar, and in Rejordan, Petitioner is not among the people protected by the Second Amendment. In 1791, during the time of the ratification of the Second Amendment, and even 100 years later at the time of the ratification of the 14th Amendment, individuals under the age of 21 were considered legal infants. It was clear that they did not have Second Amendment protection. And it is beyond historical debate that those individuals were not covered by the Second Amendment at that time. But there are other cases out there that would tend to argue with this. Back in the Revolutionary War, we had teenagers actually lifting up arms and fighting against the British. So they could do it then, why can't we now allow them to carry weapons as well? Your Honor, a duty to defend one's country and fight in war is very different from the rights that the Constitution enshrines upon individuals. What we're discussing here is the Second Amendment right to bear arms, not the duty to go serve for one's country. These are two completely separate issues that have completely separate analysis. So you don't believe that the preamble on the Second Amendment with that in a malicious ties in with the right to bear arms? I believe there is a difference there, Your Honor. I believe the duty to serve in a militia is very different from the right to bear arms. Under the second step of the Bruin analysis, the burden then shifts to the government to establish that its regulation is consistent with the nation's historical tradition of firearm regulation. Bruin established that the government may do so by identifying historical regulation that is distinctly similar to the challenge regulation, or by using analogical reasoning. And this is where Rahimi, the United States Supreme Court decision in Rahimi, further explains this step. Rahimi stated that the evidence produced by the government need not be an analogical twin, but rather, I'm sorry, may not be a historical twin, but rather be a historical animal. But most importantly, Rahimi encouraged the courts to use common sense analysis in Second Amendment decisions, ultimately concluding that the government could restrict firearm possession of certain classes of people. Rahimi also established or stressed upon the fact that facial challenges like the one brought by Petitioner here are extremely hard. Do you believe that there's a difference between a law-abiding citizen as described in Bruin and a responsible citizen as described in Rahimi? Your Honor, I do believe there is a difference. What would that difference be in your opinion? Law-abiding is more like the court in Rahimi stated. Law-abiding or responsible is more open-ended. Law-abiding, like Your Honor stated, is more about just following the laws. But that is not what we're discussing, or that is not part of the discussion here today, because we're not alleging that the government, we're not talking about restricting the rights of law-abiding or responsible citizens. We are primarily just going with the Bruin test about government or the state having historically regulated the conduct of individuals under the age of 21 since the time of the framing of the Constitution and continuing to do so even today. Didn't Bruin, though, sort of kind of rush over the Floyd Statute to me? Because the Floyd Statute's reading were in a contention in Bruin, but the court just kind of said, well, you know, we don't need to really kind of address this. So they kind of like by-stamped it. That's exactly right. So why should we then consider Bruin with regards to the facts of this case? Your Honor, that is exactly right. Bruin has already endorsed the Floyd Statute, saying that the 43 jurisdictions that apply the sham issue, licensing regime, regulating public carry of firearms under their Floyd schemes may continue to do so. So just solely based on that, petitioner's challenge should be dismissed. If that is correct. One other question I had is, you know, this court gave both sides an opportunity to supplement here, and one of the cases that they raised that you did not respond to was the Worth v. Jacobson. Would you like to say why? That is correct, Your Honor. Worth v. Jacobson, the petitioner did file a petition on that. That is an Eighth Circuit judgment. Firstly, it is not binding on this court. It is also an outlier because the analysis that the court used in Worth v. Jacobson kind of follows what they did in NARA. And in both those cases, it is completely contradictory to what Illinois courts have held or how Illinois courts have analyzed the text of the Second Amendment. What is binding on this court is not Worth v. Jacobson or NARA. What is binding on this court is Moseley. And in Moseley, the Supreme Court clearly held that public carry restrictions on persons under the age of 21 is historically rooted in the nation's tradition of firearm regulation. And further, even in Aguilar, the court stated that laws banning juvenile possession of firearms have been commonplace for over 150 years and both comport with and reflect longstanding practices prohibiting certain class of individuals from possessing firearms. Therefore, the way the Illinois courts have interpreted the Second Amendment and this issue, individuals under the age of 21 can be restricted from possessing or carrying firearms. Anything else? Sorry? Anything else you want to raise? That is it, Your Honor. I would like to rest on our brief and on arguments for Issue 1 and based on the reasons stated in our brief. And today I would request this court, the people request this court to affirm the dismissal of Petitioner's 2401 petition. Any questions? I don't. Thank you very much. Thank you, Your Honor. Okay. Thank you. Thank you. Your Honor, three quick points in rebuttal. First, I'd like to address the state's argument that Bruin foreclosed a challenge to the Floyd statute by its footnote discussing how the various shall issue regimes in 43 states are. And we were one of them, right? That's correct. However, Bruin did not address the imposition of criminal penalties for violating a Floyd statute. That is the key constitutional challenge that we are raising here. Even if you completely ignore all of the 18- to 20-year-old stuff, there is no historical analog for imposing felony criminal penalties for simply possessing a weapon without a license. And Bruin did not address that whatsoever. So even if, you know, Illinois' regime is a shall issue regime, even if it is found to be constitutional by the Illinois Supreme Court in the upcoming Thompson case, it still does not, none of these cases address the imposition of criminal penalties specifically. But in doing so, wasn't the Supreme Court just basically saying, hey, we're going to leave this up to the states? I don't think so, Your Honor. I mean, the Supreme Court was careful to say that it was not deciding the constitutionality of those shall issue regimes, that it was not before the courts. I think it was simply trying to carefully draw the outer bounds of what it was deciding. It was making clear, you know, we're only deciding this outlier of a may issue scheme. There may be other cases that come up later with the shall issue scheme. And the language that my colleague cites about how these states may continue to enforce those statutes was actually in a concurrence, not in the majority opinion. And once again, none of this is addressing the imposition of criminal penalties. And what about the argument regarding Worth v. Jacobson, saying it's an outlier case, don't consider it? Your Honor, it's not an outlier. In fact, the only federal appellate decisions to address this issue of 18- to 20-year-olds so far is Worth and Lara. There was a case out of the 11th Circuit, NRA v. Bondi, but that case has since been vacated. So, in fact, the weight of federal authority on this issue is in my client's favor. And it is true that... Well, the 7th Circuit hasn't opined yet, has it? That's true, Your Honor. And perhaps they will weigh in at some point. But at this point, the weight of federal authority is on our side. And it demonstrates that the analysis conducted in the pre-Bruin, Illinois cases was incorrect. So, you know, even though this court may, you know, have in the past been bound by Mosley, at this point we're bound by Bruin. And the Worth and Lara cases essentially demonstrate that under Bruin, those prior Illinois cases are incorrect. The second point I'd like to make goes to standing, Justice Lincoln. I would also like to point you to the district court case Powell v. Tompkins. That was one of the cases that the Illinois Supreme Court relied on in Mosley and Aguilar. In that case, the petitioner, it was a habeas petitioner, challenged both the licensing scheme and the requirement of being 21 and up. Was he convicted of both of those? I don't know, Your Honor, but I would be happy to... It would make a difference to this case. And I would be happy to file a supplemental brief on that issue if you would like. I can look it up myself. Okay. I would just say I want you to be arguing something that is the same as our case. I understand, Your Honor. But I still think that the Powell case is relevant, regardless of what the petitioner was convicted of, because in that case, the court discussed how the petitioner did not need to apply for a license and be denied because it was clear under the statutory scheme that that would have been futile. So the petitioner still had standing, even though he could not demonstrate that he had attempted to obtain a license. So I think that goes to the issue of standing in this case as well. And I would also like to point out that the state did not dispute standing in this case. I know they didn't. I didn't understand why. That's why I'm asking all these questions. Understood. The third point I'd like to make is regarding Justice Reyes's question to the state about forfeiture of the issue on appeal. The fact of the matter is the petition that my client filed pro se raised a facial challenge to his conviction under the Second Amendment. That is all that is required. He did not even need to cite case law in his petition. He did so, and the cases that he cited, unfortunately, were not particularly relevant to his case. However, on appeal, you know, counsel is entitled to cite more relevant case law. And, in fact, the case law has developed since the filing of his petition, so he could not have even cited a large portion of the cases that we rely on on appeal. But this situation is very different from the cases that the state cites on this issue, where the claim actually differed substantively from the petition to appeal. Here, we simply have a matter of developing case law. And his petition, I believe, was pursuant to Aguilar, correct? He cited Aguilar and Burns. That's correct, Your Honor. All right. And then he's over 21 now? Yes. Okay. If there are no further questions, then we ask that this Court reverse Mr. Doring's conviction for AUW outright or remand for further proceedings as stated in our briefs. Thank you. Thank you. Thank you very much. Thank you, everyone, for a very interesting case in a well-argued manner. And this Court will obviously take it under advisement, and we will be rendering a decision post-case. All right.